```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                   EASTERN DIVISION
```

**UNITED STATES OF AMERICA,**          )
                                        )
        **Plaintiff,**      )
                                        )
  v.                                   ) No. 4:16-CR-38-CDP
                                        )
**SALVADOR ROJAS-ACOSTA,**              )
                                        )
        **Defendant.**      )


**SENTENCING HEARING**


**BEFORE THE HONORABLE CATHERINE D. PERRY**
**UNITED STATES DISTRICT JUDGE**


**MARCH 21, 2017**


**APPEARANCES:**

For Plaintiff:        John T Davis, AUSA
                      **OFFICE OF U.S. ATTORNEY**
                      111 South Tenth Street, 20th Floor
                      St. Louis, MO  63102

For Defendant:        Kevin Curran, AFPD
                      **OFFICE OF U.S. PUBLIC DEFENDER**
                      1010 Market Street, Suite 200
                      St. Louis, MO  63101

*Interpreter:*        *Laura Garcia-Hein*

*Reported by:*        *Gayle D. Madden, CSR, RDR, CRR*
                      *Official Court Reporter*
                      *United States District Court*
                      *111 South Tenth Street, Third Floor*
                      *St. Louis, MO  63102       (314) 244-7987*
    (Produced by computer-aided mechanical stenography.)

1          (Proceedings commenced at 1:33 p.m.)

2          (The following proceedings were held in open court and

3  with the Defendant present.)

4              THE COURT:  All right.  Good afternoon.  We are here

5  in the case of United States of America versus Salvador

6  Rojas-Acosta.  This is Case No. 4:16-CR-38, and the Defendant

7  is here in person and with his attorney, Mr. Curran, and the

8  United States is here through Mr. Davis.

9              We do have an interpreter on the line.  Let me ask

10 the interpreter first; are you able to hear me?

11             THE INTERPRETER:  Yes.  Good afternoon, Your Honor.

12             THE COURT:  All right.  Good afternoon.  Thank you.

13             Mr. Rojas-Acosta, let me ask you; are you able to

14 hear and understand the interpreter?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  All right.  If, at any time, you have

17 difficulty understanding anything, please let me know.  Okay?

18             THE DEFENDANT:  That's fine, ma'am.

19             THE COURT:  All right.  So did you have a chance,

20 Mr. Rojas-Acosta, to go over the Presentence Report and

21 discuss it with your lawyer?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  And, Mr. Curran, could you just state for

24 the record; did you go over this with the use of an

25 interpreter?

1        MR. CURRAN: Yes, Your Honor. There's an employee of

2 our office that's bilingual and he -- my general practice is

3 that Mr. Birch goes through it word-for-word. He makes note

4 of any questions, and then we go through it again, generally

5 answering questions, and I hone in on a couple specific areas.

6 So that was done with Mr. Rojas-Acosta. We went through it,

7 and he said to me that he was satisfied I answered all of his

8 questions.

9        THE COURT: All right. And so, Mr. Rojas-Acosta,

10 were there any objections that you wanted your lawyer to raise

11 that have not been raised to the report itself?

12        THE DEFENDANT: No, ma'am.

13        THE COURT: All right. Then I will adopt the

14 Presentence Report as my findings of fact and my legal

15 conclusions about the advisory guidelines. As the parties

16 recommended, there is a total offense level of 21. The

17 Defendant is in criminal history Category I, and so the

18 advisory guidelines range is 37 to 46 months.

19        We do have a new procedure in this court under Local

20 Rule 13.05 to hold a bench conference in every plea and every

21 sentencing hearing. We will now conduct that bench

22 conference, and this portion of the transcript of this hearing

23 will be filed under seal. So we're -- and I believe the

24 sidebar now works with the interpreter; right?

25        THE CLERK: Yes.

1               THE COURT:  Okay.

2          (Pursuant to Local Rule 13.05, a bench conference was

3     held on the record and placed under seal, after which the

4     following proceedings were held in open court.)

5               THE COURT:  All right.  So with that done, then,

6     Mr. Curran, I would ask you to make any statements on your

7     client's behalf that you would like.  I did read your

8     sentencing memorandum and, you know, have considered that, but

9     certainly, you should feel free to say anything else you would

10    like to say.

11              MR. CURRAN:  Yes, Your Honor.  Thank you.  I want to

12    highlight some of the things I think you know about

13    Mr. Rojas-Acosta already.  He's 52 years old.  He's been in

14    our country since 1990.

15              Five children, teenage or older.  All are employed.

16    I've dealt with three of them personally.  He has his two

17    sons.  His oldest son works in a warehouse.  Second oldest

18    works construction.  His third -- his next, Edith, works in a

19    hospital.  She's not a nurse, but it's a health-care related

20    field.  And then the last two are both in school.  A young

21    man, Ulises, he's in court with us today.  He drove up with

22    all of them.  His girlfriend is here.  And Mr. Rojas-Acosta's

23    wife is here.  There's also a mention of a one-year-old.  He's

24    making payments, as it says.  That's accurate.  But that's not

25    court-ordered.  He's paying monthly child support to support

1    the child.

2            The other things we know are with the exception of
3    1996 he has no record.  I think it's important to know with
4    that misdemeanor that we never -- nothing shows up on the
5    radar ever again, and I think one thing we can glean from that
6    is, to one extent, he's a man who learns his lesson.

7            The type of work -- and I know the PSR mentions it,
8    and I mentioned it in my motion.  In the beginning, he was a
9    laborer, and then he developed this love of training horses.
10   That took him, actually, in my mind, to some pretty
11   interesting places.  He trained horses at Hialeah in Florida
12   over his career.  He's been as close to us as Fairmount Park,
13   and he's also been at tracks in Iowa and Indiana, throughout
14   the Midwest, and this began sometime in the nineties.

15           After he was here, he got his green card almost
16   immediately, and then he, through sort of serendipitously
17   working at a farm, developed his love of horse training.

18           That was one of the precursors to him standing here
19   today.  I'll get to that in a second.

20           He's certainly a hard working man.  Now, because of
21   the constraints that he has from being on supervised
22   release -- and I may add at this point there's not been one
23   problem, not even a hiccup while he's been on supervision.  I
24   talked with the local office today, and they have nothing but
25   good things to say about him.  And you may remember he and his

1  wife were coming up for a plea and they had a family incident.
2  They had both parents in the hospital, tracked me down
3  because -- I believe -- I think I was in trial at the time --
4  tracked me down because they were worried about not making
5  court, to get permission, and you may not remember this.  I
6  found you.  Luckily, you were around late.  I found you in
7  chambers, and we got it continued so they could get back to
8  the family.  I bring that up to show that he took the
9  supervision and he took this charge and he took this Court
10 seriously and treated it with respect.
11         Always been respectful to me.  Frankly, it kind of
12 belies the charge with me having dealt with him and his
13 family.  So he's clearly a man who's learned his lesson.
14         Now, the charge itself, I explained that.  You know,
15 from the best we can tell from talking with him and the little
16 bit of work we were able to do -- remember we're dealing with
17 Texas, and then he was in Illinois.  The type of people that
18 are involved in the drug trade, I think, based on my
19 experience -- not personal experience -- just from doing this
20 job.  Horse racing, that goes back to the days of the mob.
21 You know, there's a percentage of people involved in the horse
22 racing industry that are doing it for the wrong reason.
23 They're either laundering money, or they're doing it as
24 another income generator, and I think that's where he came
25 across the people that persuaded him to make that other trip.

1            I debated whether -- well, the Government knew about
2    the other trip, but, you know, I think you'll notice it's not
3    in the PSR, but I brought it to your attention because it
4    fits, and he allowed himself to be persuaded or threatened to
5    do it once, thinking that would be done with it, foolishly
6    thinking that.  And remember, this is late in life.  He's 50,
7    49, 50.  This isn't a man who set out to make a living by
8    breaking the law.  His whole life, with this exception, has
9    been making efforts to earn money honestly in doing the things
10   that he loved.  Well, instead of -- I think at the time of
11   that first trip, he was thinking, "Well, no way.  I'm so bad
12   at this.  You know, they won't ask me again."  But the actual
13   opposite happened.  Now he was in to them, and he thought this
14   would be his -- and there's an element of threat.  He fears
15   for his family.  We all know those sort of things.
16           So that's who Mr. Rojas-Acosta is.  Now, I can state
17   with some confidence I don't think we will ever see him again
18   no matter what you do.  We have -- you know, he's a green card
19   holder, and I've run across this, and sometimes, if with the
20   resources of my office we could buy a time machine, he's one
21   of the ones I would send back and say, "Get citizenship,"
22   because there was no reason why he couldn't.  He just never
23   got to it.  So he had the green card.  So as you well know,
24   there's probably going to be some consequence to him as to
25   whether he's going to stay in this country.

1        He's been in contact with a lawyer.  That's not my
2   area of expertise.  I do advise -- we've had conversations
3   with him and his family about the practicalities of this.  The
4   lawyer they have in Texas is waiting to see what happens here.
5   I don't know what that does, but that's where we are, but I'd
6   ask you to factor that in.
7        Now, with regard to the sentence, I'm going to say it
8   as plainly as I feel it.  That range, looking at this man,
9   looking at his background, looking at 3553(a) factors, it's
10  too much time to meet any of the objectives.  That
11  guideline -- although it's a statutory maximum of five, that
12  guideline is a very punitive guideline.  The underlying
13  concept is probably a good reason, you know, that moving -- we
14  always think of moving the drugs, but the concept of moving
15  the money is also important.  But like so many of these, it's
16  punishing the absolute lowest person on the totem pole.
17       As an exercise, just I was curious.  I ran this
18  amount of money.  Had it been under 2B1.1, if he'd have
19  attempted to defraud a bank, the guideline is lower.  The
20  guideline is actually 21 to 27 months.
21       Now, occasionally I make light of situations, but
22  this truly is a situation where he might have been in a better
23  position standing here had he tried to steal it than to have
24  it in his car.  That doesn't make it right, but I just want to
25  say it's a harsh guideline, I think, for good reason, but I

1  think particularly in this situation that's more of a sentence

2  to achieve the objectives that we want.

3  　　　　As I said, he hasn't lived the life of crime.  The

4  conviction itself is going to have severe consequences to him

5  on a number of levels.  Even if he gets permission to stay

6  here, it's most certainly closed doors in terms of job

7  opportunities.  I don't know if it directly affects the horse

8  training.  I assume -- surely with this, there's some

9  licensing involved somewhere along the line.  I think

10 sometimes the horses have to be medicated.  You have to

11 supervise that.  It definitely has a chance of having a

12 substantial economic effect on his family.  I mean all the

13 children are moving in the right direction.  He is providing

14 substantial support.

15 　　　　So that 36 months is too harsh a punishment for him,

16 and, Judge, frankly, I'm still kind of wrestling with what

17 kind of sentence to propose here.  I mean, on one hand, I

18 think he would do -- from talking to Pretrial and the people

19 that know him, I don't think we'd ever see him again on a

20 noncustodial sentence, but I realize that's a pretty big jump

21 from the guideline, and that will be up to you, but I think

22 something substantially lower than what the guideline says is

23 appropriate here.

24 　　　　It's the first time he's doing any time.  He is a

25 first offender as far as is concerned a felony in front of the

1    Court.  All the latest research done by the U.S. Sentencing
2    Commission -- and that's the way the world's going now -- is
3    that first offenders deserve separate consideration.  I think
4    that's going to be codified probably in the next guideline
5    book or the next.
6           He's had opportunities to avoid this.  He was living
7    in Texas.  He knew what the consequences were.  You know, he
8    knows today standing here and his family knows he's facing a
9    potential jail sentence.  He cooperated.  He came up here.
10   He's ready to take his medicine.  Again, I said at his age.
11   And now, sending a message, you know, never that -- I don't
12   know how to respond to that.  I mean he's going to have severe
13   consequences to this.  I think you can do substantially less
14   than what the guidelines suggest and make the point, punish
15   him, protect society.
16          Now, protect society?  The obvious answer is there's
17   nothing in his life that shows he's a threat or a danger to
18   anybody.  Now, the drug trade certainly is, but I'm going to
19   say it again. He was at the lowest level.  This was, you
20   know, a one-time thing, a two-time thing.  We know we're
21   not -- well, frankly, he's burned as far as anybody that's
22   going to try to get ahold of him now now that he has a
23   criminal case.  Now that he's been convicted, I doubt he's
24   going to be approached again.  So I think that's over, and now
25   I think he knows how to say no to it based on his experience

1  here.  So I don't think we'll see him again.

2         So what's appropriate for this man?  Well, all I can

3  do is finish the way I started.  His age.  Long solid work

4  history.  Solid family that's here and supportive of him.  A

5  job that he loves and enjoys and is good at.  And so I'd like

6  you to factor all that in when you decide the appropriate

7  sentence for Mr. Rojas-Acosta, but I'll say it again.  This

8  guideline range, based on what I know about this man, I

9  believe, is just too harsh, extremely too harsh to meet the

10 goals we're trying to achieve here today.  Thank you, Judge.

11         THE COURT:  Mr. Rojas-Acosta, do you wish to make any

12 statements to me before I impose sentence?  It's your right to

13 do so, and this is your opportunity.

14         THE DEFENDANT:  Yes, Your Honor.  I would like to say

15 that I want to apologize for the wrongdoing.  Honestly, I have

16 been a hard working man, and my main interest has been to get

17 ahead my family, fulfill the dream of supporting my family

18 through honest, hard working jobs, which is what I have been

19 doing as a good green card holder.

20      (Sealed portion excerpted.)

21      (The following proceedings were held in open court.)

22         THE COURT:  All right.  Well, based on all of the

23 statements of the parties and everything I've heard here

24 today, including reviewing the history and background of this

25 Defendant, I am going to vary substantially from the

1  guidelines because I believe the guidelines are higher than
2  necessary to meet the sentencing objectives.  I am going to
3  sentence you to 12 months and one day in prison.  That is a
4  substantial variance from the sentencing guidelines.  You will
5  still go to jail.  It's important that you understand how
6  serious this crime was, but I believe that that will be
7  sufficient to provide the punishment necessary, reflect the
8  seriousness of this crime, and provide whatever deterrence to
9  you and others that might be achieved through sentencing.  And
10 then I don't believe there's any unwarranted sentencing
11 disparities because your case is different from -- is quite
12 different actually from other similar cases that I have had in
13 front of me.
14         So that is the sentence, and I am varying because of
15 the Defendant's long history of being a law-abiding citizen
16 and working and supporting his family and the fact that this
17 appears to have been something that although very serious did
18 happen only a couple of times, and the circumstances
19 surrounding at least this incident where he was arrested this
20 time show some level of -- even though not rising to the level
21 of legal coercion or duress, I can understand how he ended up
22 committing this particular crime once he had been stopped the
23 first time around.  So I think when those things are
24 considered, it is -- I can't say that it would meet the level
25 of, you know, departure for aberrant behavior.  It's not

```
 1   because he did it twice, but I will say that it is something
 2   out of character for him given his long history of working and
 3   supporting his family, and so I think for all of those reasons
 4   that a sentence of 12 months and one day is sufficient to meet
 5   the sentencing objectives.
 6              So it is the Judgment of the Court that the Defendant
 7   is hereby committed to the custody of the Bureau of Prisons to
 8   be imprisoned for a term of 12 months and one day.
 9              Upon release from imprisonment, the Defendant will be
10   placed on supervised release for a term of one year.
11              If he is not deported, then he must report within 72
12   hours of release from custody of the Bureau of Prisons -- or
13   from any custody, he must report in person to the Probation
14   Office in the district to which he is released.
15              As part of the supervision, the Defendant must comply
16   with the mandatory conditions of supervision, including not
17   committing another crime, not possessing a controlled
18   substance, being -- and cooperating in the collection of DNA
19   as directed by the Probation Office if required by law.
20              I am suspending the mandatory drug testing
21   requirements because I have determined that Defendant poses a
22   low risk of future substance abuse.
23              Now, as part of your supervision, you must comply
24   with the standard conditions of supervision that have been
25   adopted by the Court and with the following additional
```

1   conditions, and if there are any costs associated with these
2   additional conditions, you must pay them based on a copayment
3   fee established by the Probation Office.
4           Now, these are conditions.  You know, following the
5   standard and mandatory conditions, I believe, is sufficient in
6   your case for assuring you continue to be a law-abiding
7   citizen when you get out; however -- and I am not an
8   immigration judge, but as a condition of your supervision, if
9   you are ordered deported by immigration, which is not me, but
10  if that should happen, you must remain outside the United
11  States unless you're legally authorized to reenter, and if you
12  reenter, you must report to the nearest Probation Office
13  within 72 hours after you return.
14           If you are not deported, then you must submit your
15  person -- in addition to the other conditions -- submit your
16  person, property, house, residence, vehicle, papers,
17  computers, other electronic devices, or office to a search
18  conducted by a probation officer, and you must warn any other
19  occupants of your premises about this condition.  The
20  probation officer may conduct a search under this condition
21  only when reasonable suspicion exists that you've violated a
22  condition of supervision and that the areas to be searched
23  contain evidence of the violation.  Any search must be
24  conducted at reasonable times and in a reasonable manner.
25           I do find that the Defendant does not have the

1  ability to pay a fine, and therefore, no fine is imposed.

2          It is ordered, however, that the Defendant must pay

3  to the United States the special assessment of $100, and that

4  shall be due immediately.

5          I will also declare that the property that was the

6  subject of the Preliminary Order of Forfeiture is hereby

7  orally declared forfeited, and any interest the Defendant

8  might have in that property is forfeited.

9          Mr. Rojas-Acosta, if you wish to appeal this

10  sentence, any appeal by you must be filed within 14 days of

11  today's date.  If you do not file a Notice of Appeal within 14

12  days, you'll be forever giving up your right to do so.  You're

13  entitled to be represented by an attorney in taking an appeal,

14  and if you can't afford a lawyer, one will be appointed for

15  you at no expense to you, and if you request, the Clerk of

16  Court will assist you in filing a Notice of Appeal.

17          Now, are there any recommendations that you want me

18  to make to the Bureau of Prisons, Mr. Curran?

19          MR. CURRAN:  Yeah.  If you'd recommend the facility

20  in Texas, that's where his family is.  That's where everyone

21  is.

22          And then I'm also going to ask for voluntary

23  surrender, Your Honor.

24          THE COURT:  And where in Texas does the Defendant's

25  family -- Texas is a big state.

1      MR. CURRAN:  That's a good --

2      THE COURT:  What's the big city it's closest to?

3      THE DEFENDANT:  Austin.

4      MR. CURRAN:  Austin.

5      THE COURT:  Okay.  Thank you.  As close to Austin,
6  Texas as -- all right.  So I will order that -- I will
7  recommend to the Bureau of Prisons that the Defendant be
8  housed at a Bureau of Prisons facility as close to Austin,
9  Texas, as meets their regulations, and this is just a
10 recommendation.  I can't guarantee that the Bureau of Prisons
11 will put you where I recommend, but I will make that
12 recommendation.

13     Now, the Defendant is asking for voluntary surrender.
14 Mr. Davis, what's your position on that?

15     MR. DAVIS:  No objection.

16     THE COURT:  All right.  So, Mr. Rojas-Acosta, it will
17 be your job -- I'll let you stay out on bail pending your
18 surrender to the institution designated by the Bureau of
19 Prisons.  Until such time as you surrender, you must continue
20 to report in to Pretrial Services and do everything they tell
21 you to do.  Any violations of your bond at this point would
22 result in your being arrested and start serving your jail
23 term.  It will be your responsibility to get yourself to
24 whatever prison they tell you to show up to.  You know, you'll
25 have to show up when and where they tell you.  Do you

```
 1  understand all that?
 2          THE DEFENDANT:  Yes, Your Honor, I understand
 3  correctly.
 4          THE COURT:  All right.  Anything further, counsel?
 5          MR. DAVIS:  Nothing on behalf of the Government.
 6          MR. CURRAN:  Judge, I will amend the record that 50
 7  is not that old.  Do you feel better now?
 8          MR. DAVIS:  Thank you.
 9          THE COURT:  It sounds young to me.
10          MR. CURRAN:  Exactly what I was thinking.
11          THE COURT:  All right.  So the Defendant is released
12  on the existing bond pending his voluntary surrender to the
13  institution designated by the Bureau of Prisons.
14          And I'm going to ask the interpreter to remain on the
15  line one moment.  Court's in recess, but I'm going to ask the
16  interpreter to remain on the line so we can figure out our
17  sidebar issue.
18          THE INTERPRETER:  Yes, Your Honor.
19      (Proceedings concluded at 2:03 p.m.)
20
21
22
23
24
25
```

18

<u>CERTIFICATE</u>

    I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

    I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

    I further certify that this transcript contains pages 1 through 17 inclusive.

    Dated at St. Louis, Missouri, this 3rd day of May, 2017.

                                    _____

                                        /s/ Gayle D. Madden

                                  GAYLE D. MADDEN, CSR, RDR, CRR

                                        Official Court Reporter